UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**THOMAS READER,**

*Plaintiff*,

v.                                                                                      Case No. SA-23-CV-1024-JKP

**DEPUTY ERIC GRAHAM, in his official and individual capacities; DEPUTY JIMMY VASQUEZ, JR., in his official and individual capacities; and KERR COUNTY, TEXAS,**

*Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment (ECF No. 19) filed by Defendants Kerr County Deputies Eric Graham and Emilio Vasquez.[1] Plaintiff filed a response (ECF No. 21), and Defendants filed a reply (ECF No. 22). After due consideration of the briefing, the record evidence, and the applicable law, the Court **GRANTS** the motion.

### I. BACKGROUND[2]

On July 19, 2022, Kerr County Sheriff Deputies Eric Graham ("Deputy Graham") and Emilio Vasquez ("Deputy Vasquez") initiated a traffic stop of a vehicle driven by Plaintiff Thomas Reader. ECF No. 19 at 2. Deputy Graham drove a marked Kerr County Sheriff's Patrol vehicle with Deputy Vasquez, serving as cover officer, riding as a passenger. *Id*. Deputy Graham previously encountered Plaintiff when he executed an active arrest warrant against Plaintiff for driving with a suspended license on April 7, 2022. *Id*.

---

[1] Deputy Vasquez's correct name is Emilio Vasquez. Plaintiff improperly refers to him as Jimmy Vasquez. ECF No. 19 at 2.

[2] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

On July 19, 2022, Deputies Graham and Vasquez were headed towards the Sheriff's Department when Plaintiff, driving in the opposite direction, used his middle finger to communicate an obscene message to the deputies as their vehicles crossed paths. *Id.*; *see* ECF No. 21 at 5.[3] Deputy Graham made a U-Turn and observed Plaintiff make a right turn into a parking lot. ECF No. 19 at 2. Deputy Graham believed Plaintiff made the right turn without using a turn signal.[4] *Id.*

Plaintiff filed suit on August 16, 2023, alleging Defendants[5] violated his clearly established federal constitutional right to privacy, freedom from unreasonable search and seizure of his person, and right to due process. ECF No. 5 ¶ 20. Plaintiff was not represented by counsel when he filed his complaint. On November 25, 2024, C.J. Grisham filed a notice of appearance of counsel. ECF No. 18. Despite retaining counsel, Plaintiff did not seek leave to amend his complaint, and the original complaint is the live pleading in this case.[6]

Plaintiff alleges this Court has jurisdiction over his "***cause of action*** arising under the Constitution of the United States and 42 U.S.C. § 1983." ECF No. 5 ¶ 3 (emphasis added). He also

---

[3] Plaintiff attached a black and white photograph to his response which shows his middle finger gesture towards the officers. The picture also shows Plaintiff activated his right turn signal.

[4] Defendants concede "[d]ash camera footage from the patrol vehicle later indicated that Reader had activated his turn signal and the traffic ticket was later dismissed." ECF No. 19 at 2 n.1.

[5] Plaintiff identifies Deputy Graham, Deputy Vasquez, and Kerr County as defendants. ECF No. 5 at 2. Plaintiff sues Deputies Graham and Vasquez in their individual and official capacities. *Id.* at 1–2. The Court previously dismissed the claims against Kerr County. *See* ECF No. 10. The official capacity claims against the Deputies merely duplicate the claims against the county. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Official-capacity claims are subject to dismissal as duplicative when the "allegations duplicate claims against the respective governmental entities themselves." *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). When claims against the governmental entity have been dismissed, the plaintiff cannot maintain claims against the individual officers in their official capacities. The Deputies do not specifically seek dismissal of the official capacity claims—likely presuming that they are no longer at issue. The better practice, however, is to address all claims sought to be dismissed through summary judgment. Nevertheless, Fed. R. Civ. P. 56(f)(2) provides courts with discretionary authority to "grant the motion on grounds not raised by a party" so long as they provide "notice and a reasonable time to respond." The Court thus puts Plaintiff on notice that it will dismiss the official capacity claims against both deputies unless Plaintiff provides a sufficient reason to not do so within fourteen days from the date of this Memorandum Opinion and Order.

[6] The scheduling order entered in this case set a deadline of September 19, 2024, to amend pleading. *See* ECF No. 14 ¶ 3. The deadline would not have prevented counsel from seeking leave to amend but would have triggered an analysis under Fed. R. Civ. P. 16(b)(4) to determine whether leave should be granted. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

alleges "[t]his Court has supplemental jurisdiction over plaintiff's *causes of action* arising under Texas law pursuant to 28 U.S.C. § 1367." *Id*. (same). Under the heading, "COUNT I," Plaintiff brings a claim or cause of action for 'damages under 42 U.S.C. § 1983 for injuries set forth above against Defendants Graham and Vasquez for violation of his constitutional rights under color of law." *Id*. ¶¶ 22–23. Plaintiff incorporated the allegations in paragraphs 1–21 for his § 1983 claim. *Id*. ¶ 22. Under the heading, "COUNT II," Plaintiff alleges a claim or cause of action for false imprisonment. *Id*. ¶¶ 24–25. He alleges the deputies "falsely imprisoned" him "by unlawfully detaining him against his will for a prolonged time." *Id*. ¶ 25. Again, Plaintiff incorporated the allegations in paragraphs 1–21 for his false imprisonment claim." *Id*. ¶ 24. Under the heading, "COUNT III," Plaintiff alleges a claim or cause of action for malicious prosecution. *Id*. ¶¶ 26–27. He again incorporated paragraphs 1–21. *Id*. ¶ 26.

Because Plaintiff filed his complaint pro se, the Court liberally construes it, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), even though he has since retained counsel. From the complaint, it is unclear whether the false imprisonment and malicious prosecution[7] claims arise under Texas common law, or whether they are Fourth Amendment constitutional claims. The complaint, furthermore, is unclear as to whether Plaintiff alleges a claim based on the initial stop of his vehicle.

---

[7] "The elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive." *Reyes v. Greer*, 686 F. Supp. 3d 524, 532 (W.D. Tex. 2023) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)). "'[C]ourts must look to the elements of a malicious prosecution claim under the law of the state where the offense was committed,' in this case Texas." *Id*. (alteration in original) (quoting *Gordy v. Burns*, 294 F.3d 722, 726 (5th Cir. 2002)). But because malicious prosecution in the § 1983 context "is essentially a federal constitutional claim," federal courts need not follow "the state courts' interpretation of [the state-law tort's] elements." *Gordy*, 294 F.3d at 727. In Texas, the elements of malicious prosecution are: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong*, 60 F.4th at 279 (quoting *Gordy*, 294 F.3d at 727). An additional "threshold element" of Fourth Amendment malicious prosecution is that there must have been "an unlawful Fourth Amendment seizure." *Reyes*, 686 F. Supp. 3d at 532 (quoting *Armstrong*, 60 F.4th at 279); *accord Soto v. Monge*, 735 F. Supp. 3d 792, 803 (W.D. Tex. 2024).

Even though the initial stop is clearly part of the factual background in this case, Plaintiff does not directly challenge the propriety of the initial stop until filing his response to the motion for summary judgment. In that response, Plaintiff, for the first time, challenges the initial stop of his vehicle by alleging Deputy Graham lacked reasonable suspicion for the stop. *See* ECF No. 21 at 2–8. Based on counsel's briefing, Plaintiff contends Deputies Graham and Vasquez violated the Fourth Amendment when they seized or detained him without reasonable suspicion and seized or arrested him without probable cause. *See id.*[8] Even with liberally construing the complaint, the Court concludes that Plaintiff does not allege a Fourth Amendment violation based on the initial stop. Plaintiff cannot raise this issue for the first time in response to a motion for summary judgment. "A claim that is not raised in the complaint and only for the first time 'in response to a motion for summary judgment is not properly before the court.'" *Pina v. Tex. Roadhouse Holdings, LLC*, No. 7:18-CV-350, 2021 WL 2457845, at *5 (S.D. Tex. June 15, 2021) (citing *Cutrera v. Bd. of Supervisors of LSU*, 429 F.3d 108, 113 (5th Cir. 2005)). Therefore, the Court will not consider a claim that Defendants violated his Fourth Amendment right to free from an unreasonable seizure when they stopped his vehicle without reasonable suspicion.

Plaintiff, in response to Defendants' motion for summary judgment, does not defend his malicious prosecution claim. The law in this Circuit is well established that "[w]hen a plaintiff fails to defend a claim in response to . . . a summary judgment motion, the claim is deemed abandoned." *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2-3 (N.D. Tex. July 2, 2019) (Lindsay, J.) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (determining that the plaintiff abandoned his claim by failing to respond to the defendant's Supplement to Motion for Summary Judgment)); *see also Cantu v. Freedom Mortg.*

---

[8] The Court understands Plaintiff does not allege a violation of his First Amendment rights, but contends Defendants followed him after he made a gesture that may be entitled to First Amendment protection.

*Corp.*, No. 3:19-CV-01701-B, 2021 WL 356840, at *2 (N.D. Tex. Jan. 4, 2021) (recommendation of Mag. J.) *accepted by* 2021 WL 351409 (N.D. Tex. Feb. 2, 2021). Here, Plaintiff did not address Defendants' challenge to his cause of action for malicious prosecution. As such, the claim or cause of action is deemed abandoned.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] "As to materiality, the substantive law will identify which facts are material" and a fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a dispute over a material fact qualifies as "genuine" within the meaning of Rule 56. *Id*. Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247–48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

In determining whether to grant summary judgment, the courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a

---

[9] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

5

motion for summary judgment." *Id*. Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott*, 550 U.S. at 381. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. However, when qualified immunity is at issue, "to the extent that any material fact dispute remains after viewing the facts in light of the available video evidence, the court should deny summary judgment on grounds of qualified immunity." *Bagley v. Guillen*, 90 F.4th 799, 800 (5th Cir. 2024).

### III. QUALIFIED IMMUNITY

Generally, the affirmative defense of qualified immunity is an immunity from suit and shields a government official for actions within their discretionary authority when their conduct complies with clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "Once a government official establishes that his conduct was within the scope of his discretionary authority, it is up to the plaintiff to show that (1) the official 'violated a statutory or constitutional right,' and (2) the right was 'clearly established at the time.'" *Sweetin v. City of Tex. City*, 48 F.4th 387, 391–92 (5th Cir. 2022) (quoting *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022)). This case presents no question as to the Deputies satisfying their burden—the nature of their conduct clearly falls with the scope of their discretionary authority.

Determination of the applicability of the qualified immunity defense thus requires two

inquiries: (1) whether the official's conduct violated a clearly established constitutional right or statute, and (2) whether the official's conduct was objectively unreasonable under clearly established law existing at the time of the incident of which a reasonable person would have known. *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1783 (2023); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). If the Court answers both questions in the affirmative, the government official is not shielded from liability based upon qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022). A court need not analyze these prongs sequentially because if either is not satisfied, the government official is entitled to qualified immunity. *Buehler*, 27 F.4th at 981–82. Still, the Fifth Circuit provides guidance that although a district court may "'leapfrog' the first prong and resolve cases solely on the basis that defendants' conduct—even if unlawful—did not violate clearly established law, 'we think it better to address both steps in order to provide clarity and guidance for officers and courts.'" *Id*.

Although not presumed, when a defendant properly invokes the qualified-immunity affirmative defense, the burden of proving the affirmative of both prongs falls upon the plaintiff. *Id.*; *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Consequently, when a government official asserts qualified immunity upon summary judgment, the assertion shifts the typical summary judgment burden of proof. *Brown*, 623 F.3d at 253; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For conduct that is within the scope of the official's discretionary authority, the initial summary judgment burden falls on the plaintiff to demonstrate the inapplicability of qualified immunity by establishing a genuine dispute of material fact on both prongs of the inquiry. *Brown*, 623 F.3d at 252–53; *Poole*, 691 F.3d at 627–28. All inferences are still drawn in the plaintiff's favor. *Brown*, 623 F.3d at 253.

**A. Constitutional Violation**

Regarding the first inquiry, the plaintiff must show there is a genuine dispute of material fact whether the defendant violated a constitutional right—that is, a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). Because the summary-judgment initial burden falls on the plaintiff to demonstrate a genuine dispute of material fact on both prongs of the inquiry, if the Court determines there is not a genuine dispute whether the alleged conduct violated a constitutional right, the official is entitled to qualified immunity upon summary judgment. *Buehler*, 27 F.4th at 981–82; *Poole*, 691 F.3d at 627–28; *Shepard v. Hansford Cnty.*, 110 F. Supp. 3d 696, 707–08 (N.D. Tex. 2015).[10]

**B. Clearly Established Law**

Regarding the second inquiry, the plaintiff "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law." *Tucker v. City of Shreveport*, 998 F.3d 165, 172–73 (5th Cir. 2021); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). The plaintiff has the burden to point out clearly established law, and the Court asks whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation. *See Freeman*, 483 F.3d at 411; *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019). To meet this burden, the plaintiff need not identify a specific case, but a body of relevant caselaw in which an officer acting under similar circumstances was held to have violated the Constitution. *Joseph ex*

---

[10] The Court does recognize that some well-cited caselaw states the inquiry differently as: "the threshold 'constitutional violation question' [is] whether … the officer's alleged conduct violated a constitutional right…. If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because *there is no constitutional violation for which the government official would need qualified immunity*." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) (emphasis added).

*rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)).

As the Supreme Court held long ago, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court noted in *Harlow* that in most cases, the 'of which a reasonable person would have known' language in the qualified immunity standard does not add anything to the 'clearly established law' requirement because 'a reasonably competent public official should know the law governing his conduct.'" *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (quoting *Harlow*, 457 U.S. at 818–19).

The Supreme Court later "refined the qualified immunity standard by defining 'clearly established' in a way that encompasses the 'objective reasonableness' inquiry: To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. at 349–50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Harlow*, 457 U.S. at 819). And "the objective reasonableness of an official's conduct [is] measured by reference to clearly established law" as of "the time an action occurred." *Harlow*, 457 U.S. at 818. If the law is not clearly established when conduct occurs, officials cannot "reasonably be expected to anticipate subsequent legal developments, nor could [they] fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id*.

The "requirement—that an official loses qualified immunity only for violating clearly

9

established law—protects officials accused of violating 'extremely abstract rights.'" *Ziglar*, 582 U.S. at 151 (quoting *Anderson*, 483 U.S. at 639).

> By defining the limits of qualified immunity essentially in objective terms, [courts] provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow*, 457 U.S. at 819 (omitting footnote and quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

"The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful." *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012) (quoting *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009)). This has been "known since *Anderson*." *Kinney*, 367 F.3d at 350. "Indeed, '[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations.'" *Cantrell*, 666 F.3d at 919 (quoting *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008)); *accord Kinney*, 367 F.3d at 349–50; *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (adding emphasis while quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). "That is because qualified immunity is inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his particular conduct was unlawful." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "The central concept is that of 'fair warning': The law can be clearly established 'despite

10

notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Requiring "materially similar" facts is inconsistent with Supreme Court precedent. *Id.*

Courts "must frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. The Supreme Court has "repeatedly" guided courts "not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742 (citing cases); *accord City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam). It has stated

> that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted). This means that it is insufficient "that a rule be suggested by then-existing precedent." *Bond*, 595 U.S. at 12. Stated slightly differently, "clearly established" means "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up while omitting citation). Thus, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741. This leaves the rare possibility that, in an obvious case, analogous caselaw is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Joseph*, 981 F.3d at 330.

Qualified immunity "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau*, 543 U.S. at 198. "The precedent must be clear enough that

11

every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *Wesby*, 583 U.S. at 63–64. Under this guidance, "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the defendant officer] did here, or *every* reasonable officer faced with the same facts would *not* have [acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019); *Tucker v. City of Shreveport*, 998 F.3d 165, 174–75 (5th Cir. 2021). Thus, to defeat summary judgment within the second inquiry of the qualified immunity analysis, a plaintiff must point to specific caselaw holding every reasonable officer acting under similar circumstances would not have acted as Defendants did in this case.

## IV. ANALYSIS

### A. False Imprisonment/Arrest Claim

Plaintiff contends he was arrested without probable cause when Deputy Graham handcuffed him when the deputy encountered him standing outside of his vehicle. Before deciding whether Deputy arrested Plaintiff without probable cause, the predicate question here is whether Plaintiff was detained or arrested when Deputy Graham handcuffed him. Based on the Court's review of Deputy Graham's dashcam and bodycam videos and the deputies' declarations, the Court concludes Plaintiff was detained, and not arrested, when Deputy Graham handcuffed him. The Court understands Plaintiff may have technically been detained when the deputies blocked Plaintiff's vehicle in the parking lot, but Plaintiff does not challenge the basis for his initial stop through his complaint. Here, the Court's focus is on Deputy Graham handcuffing Plaintiff.

The Fourth Amendment protects a person from unreasonable seizures of his person. U.S. Const. amend. IV; *see also, Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). Violation of this right may be grounds for suit under 42 U.S.C. § 1983. *Sorenson*, 134 F.3d at 328. To establish a

Fourth Amendment claim for false arrest under § 1983, a plaintiff must establish the state common law elements of false arrest, as well as the deprivation of a constitutional right. The state common law elements require a plaintiff to show that there was a (1) willful detention, (2) it was without consent, and (3) without authority of law. *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 651(S.D. Tex. 2000).

A person is considered "seized," within the meaning of the Fourth Amendment, if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988).

A Fourth Amendment seizure requires "a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). Police detention is considered an "arrest" if a reasonable person, "in the suspect's position[,] would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest." *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). An "arrest" requires probable cause that a crime has occurred. *Id*.

A person, however, may be physically restrained by law enforcement without that custody being considered an arrest for constitutional purposes. "The police are allowed to stop and briefly detain persons for investigative purposes if the police have a reasonable suspicion supported by articulate facts that criminal activity 'may be afoot.' " *United States v. Lewis*, 208 F. App'x 298, 300 (5th Cir. 2006) (per curiam) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This investigatory

detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). If the investigatory detention lasts beyond that duration, it may turn into a de facto arrest. *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008). "[E]very seizure having the essential attributes of a formal arrest[ ] is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

The line between an investigatory detention and an arrest – and determining which applies to the facts of any particular case – is not necessarily a straightforward task. *Id*. "A seizure rises to the level of an arrest only if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Windham v. Harris Cnty.*, 875 F.3d 229, 240 (5th Cir. 2017) (citations and internal quotation marks omitted). An unreasonably long *Terry* stop can transform an investigative detention into an arrest. *United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014).

The law in this circuit is clear that officers' use of handcuffs does not automatically convert a detention into a de facto arrest. *See United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999) ("[D]rawn guns and handcuffs do not necessarily convert a detention into an arrest."); *United States v. Sanders*, 994 F.2d 200, 207 (5th Cir. 1993) ("[I]n and of itself, the mere act of drawing or pointing a weapon during an investigatory detention does not cause it to exceed the permissible bounds of a *Terry* stop or to become a de facto arrest."). Law enforcement personnel have an "interest in minimizing the risk of harm to the officers." *Summers*, 452 U.S. at 702.

The Court considered the submitted videos and the declarations of the deputies. In his declaration, Deputy Graham stated:

> Upon stopping behind Mr. Reader's vehicle, I observed him coming out of his vehicle in an aggressive manner and he immediately became verbally aggressive and confrontational. As a result, I made the decision to place handcuffs on Mr. Reader's wrists behind his back for his safety and my safety and the safety of officer Vasquez

14

and to conduct an investigatory detention.

ECF No. 19-1 at 2. Deputy Vasquez similarly stated:

> Deputy Graham pulled into the parking lot and parked behind Mr. Reader's vehicle. Mr. Reader exited his vehicle in an aggressive manner and became verbally confrontational toward Deputy Graham. For our safety, Deputy Graham handcuffed Mr. Reader's wrists behind his back in order to conduct an investigatory traffic stop.

ECF No. 19-2 at 1-2.

The first few seconds of Deputy Graham's dashcam video are inaudible, but Plaintiff had exited his vehicle and can be seen making a demonstrative motion with his hands. Graham Dashcam 1:55-1:57. Deputy Graham immediately asks to see Plaintiff's driver's license and Plaintiff refused to produce it. *Id*. 2:00-2:04. Deputy Graham's bodycam video did not capture Plaintiff's comments before Deputy Graham asked to see his license. Plaintiff's arm movement could have been a simple gesture indicating he was questioning the reason he was stopped, but the Court cannot and will not speculate. After placing handcuffs on Plaintiff, Deputy Graham stated he knew Plaintiff did not have an eligible driver's license. *Id*. 00:10-00:14. Plaintiff did not attach any evidence to his response to the motion for summary judgment, but he included a screenshot of Deputy Graham's dashcam showing that he used his right blinker to make a right turn. ECF No. 21 at 5. Deputies Graham and Vasquez both state Plaintiff exited the vehicle in an aggressive manner. *See* ECF Nos. 19-1 at 2; and 19-2 at 1-2. Neither the bodycam nor the dashcam show how Plaintiff exited his vehicle. Plaintiff was standing outside of his vehicle when the recordings began. The only evidence the Court has regarding Plaintiff's interaction with Defendants comes from the submitted videos and the deputies' declarations. Defendants stated Plaintiff was immediately verbally aggressive and confrontational. ECF Nos. 19-1 at 2; and 19-2 at 1-2. Plaintiff is clearly upset because he believes Defendants initiated the traffic stop for unlawful reasons, but those reasons are not properly before the Court based on the failure to properly plead them. Ultimately, Plaintiff

15

allowed his daughter to retrieve his occupational license, and Deputy Graham removed the handcuffs. ECF Nos. 19-1 at 2; and 19-2 at 2; Graham Bodycam 11:37. The entire encounter lasted sixteen minutes.

The evidence supports the deputies' contention that Deputy Graham handcuffed Plaintiff because he exited his vehicle in an aggressive manner immediately after he parked it and was verbally aggressive and confrontational, which can cause reasonable and legitimate safety concerns for law enforcement officers. The facts do not support Plaintiff's contention that he was arrested. The Court conducted an objective analysis of the evidence and concludes Plaintiff was detained when Deputy Graham handcuffed him. The constitutionality of the initial traffic stop is not before the Court. Whether the officers rightly or wrongly made that stop is not part of the Court's current analysis. Once the officers made that stop, they had a valid interest in minimizing the risk of harm to themselves, thus justifying the short detention and handcuffing. Plaintiff has failed to establish a constitutional violation under the first prong of the qualified immunity analysis. Assuming Plaintiff established a constitutional violation regarding his detention, Defendants' conduct was not objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation. Therefore, Defendants are entitled to judgment as a matter of law regarding Plaintiff's false arrest claim.

**B. State Common Law Tort Claims**

To the extent that Plaintiff has viable state common law tort claims, Defendants contend they are entitled to summary judgment based on governmental immunity through the Texas Tort Claims Act ("TTCA"), Chapter 101, § 101.057. By enacting the TTCA, Texas has provided "a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Section

101.057(2) of the TTCA excludes intentional torts, including false imprisonment, from the waiver of immunity. "In waiving governmental immunity, the Legislature correspondingly sought to "discourage or prevent recovery against [government] employee[s]." *Franka v. Velasquez*, 332 S.W.3d 367, 384 (Tex. 2011). Because plaintiffs would attempt to circumvent the TTCA's "damages cap or other structures by suing governmental employees," the Texas "Legislature created an election-of-remedies provision" designed to "prevent such circumvention, and to protect governmental employees." *Garcia*, 253 S.W.3d at 656.

"Section 101.106 of the Texas Tort Claims Act is an election of remedies provision, and it applies to suits involving employees of a governmental unit." *Pardo v. Iglesias*, 672 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2023), *reconsideration en banc denied*, 715 S.W.3d 422 (Tex. App.—Houston [14th Dist.] 2023, no pet.). The election of remedies provision requires the plaintiff "to sue either the governmental unit or the employee in his individual capacity." *Id*. (citing Tex. Civ. Prac. & Rem. Code § 101.106(a)–(b)). When a plaintiff sues the governmental unit, the suit "constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." *Id*. § 101.106(a). Similarly, when a plaintiff files "suit against any employee of a governmental unit," such suit "constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." *Id*. § 101.106(b). Furthermore, when "a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id*. § 101.106(e). And § 101.106(f) provides for dismissal of a government employee in certain circumstances and that section applies even when both the employee and governmental

17

unit are sued. *See Garcia*, 253 S.W.3d at 659.

Defendants rely on § 101.057 and that exclusion bars the intentional tort claims that Plaintiff asserts under Texas law. Further, both § 101.106(e) and (f) provide for dismissal of the deputies even if the exclusion did not preclude the state tort claims. Thus, Defendants are entitled to judgment as a matter of law on these claims to the extent they are viable in this case.

## V. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 19). As stated in footnote 5, the Court has accorded Plaintiff fourteen days from the date of this Memorandum Opinion and Order to provide a sufficient reason for the Court to not dismiss the official capacity claims against both deputies. The Court will defer entry of Final Judgment until after that fourteen-day period.

**IT is so ORDERED this 12th day of August 2025.**

*[signature: Jason Pulliam]*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**